USDC SCAN INDEX SHEET

















JOEH 6/27/06 16:24

3:06-CR-01380 USA V. HEAD

*1*

*CRINFO.*

FILED
JUN 2 3 2006
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No. 06CR1380-BEN |
| v. | I N F O R M A T I O N |
| STEVEN LYNWOOD HEAD, Defendant. | Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff -- Falsifying the Books, Records and Accounts of an Issuer of Securities |

The United States Attorney charges, at all times relevant to this Information:

**COUNT ONE**

**(15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff**

**FALSIFICATION OF BOOKS, RECORDS AND ACCOUNTS OF AN ISSUER)**

1. Titan Corporation was a publicly traded corporation headquartered in San Diego, California. Titan Corporation and certain of its subsidiaries, including Titan Wireless, Inc., Titan Africa, Inc., and Titan Africa, S.A. (hereinafter collectively referred to as "TITAN"), were engaged in, among other things, the business of developing and constructing wireless telephone systems for certain developing nations. Titan Wireless, Titan Africa, Inc., and Titan Africa, S.A., although separately



incorporated, shared employees, officers, and personnel with Titan Corporation.

2. Titan Corporation was an "issuer" of securities within the meaning of the Securities and Exchange Act of 1934, and, as such, was subject to the provisions of the Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1 et seq., including its accounting provisions, 15 U.S.C. § 78m(b).

3. From 1998 to 2002, Defendant STEVEN LYNWOOD HEAD ("Defendant") was employed by TITAN as an Assistant to the CEO of Titan Corporation and, later, as President and CEO of Titan Africa, Inc. Beginning in late 1999, Defendant acted as the program manager of TITAN's business activities in Benin.

4. In 1998, TITAN embarked on a project to develop a telephone system in the African nation of the Republic of Benin and to generate revenue from operating the system for a number of years.

5. In 1998, Defendant and other TITAN personnel traveled to Benin and discussed the project with the Benin Minister of Telecommunications and the Director General of the Postal and Telecommunications Office of the Republic of Benin ("OPT"), an office under the Benin Ministry of Telecommunications. During this visit Defendant was introduced to a Beninese national ("The Benin Agent") who could act as a sales agent for TITAN and who had a substantial relationship with the President of Benin.

6. In 1999, TITAN entered into a Consulting Agreement with the Benin Agent making him TITAN's agent in Benin. Prior to TITAN's engagement of the Benin Agent, Defendant was aware that the

Benin Agent had a substantial relationship with the Benin Head of State.

7. In 1999, with the consent of the OPT, TITAN acquired the rights to develop and operate, among other things, a wireless telephone system in Benin. TITAN also entered into an agreement with the OPT, known as the "BCT Contract," under which TITAN would build, among other things, a wireless telephone network that would be transferred to the OPT after TITAN was paid in full for equipment and services provided by TITAN. Under the BCT contract, the OPT had to obtain sites for telecommunications facilities, to secure authorization for use of specific wireless frequencies, and to assist in obtaining an exoneration of all customs, duties and taxes on equipment and products which TITAN imported into Benin for the BCT project.

8. The BCT Contract required that a supervisory group known as the BCT Steering Committee be established to supervise the project. This Committee consisted of Defendant, several senior officers of TITAN, the Benin Agent, and the Director General of the OPT. The Steering Committee met either in the United States or in Paris, France, approximately one time every three months between February 2000 and March 2001.

9. TITAN's agreements with the OPT required that TITAN pay "part of its profits as subsidies for development" of certain "sectors" in Benin, such as health, education, and agriculture. TITAN was to determine the practical methods of carrying out these subsidies in consultation with the Benin cabinet departments responsible for those sectors. These subsidies were referred to

as "social payments." As of December 2000, the BCT Contract had not generated profits for TITAN.

10. In or about December 2000, the Benin Agent and the Director General of the OPT solicited money from TITAN under the guise of "advanced social payments," and stated that the money had to be paid before the next presidential election in Benin, set for March 2001. At the time of this solicitation, Defendant and other TITAN employees knew that the social payments were not yet due under the terms of TITAN's agreements with the OPT, nor had there been any coordination or consultation with Benin cabinet departments, as required under TITAN's contracts. Defendant also believed that the so-called "social payments" solicited by the Benin Agent and the Director General of OPT would not be used in their entirety for the purposes identified in TITAN's agreements with the OPT. Nevertheless, Defendant at the direction of a senior officer of TITAN caused the requested payments to be made to the Benin Agent by means of a false invoice.

11. On or about January 22, 2001, within the Southern District of California, Defendant STEVEN LYNWOOD HEAD knowingly and willfully falsified a book, record and account of an "issuer" under the federal securities laws, that is, Defendant caused the submission to TITAN of an invoice on the Benin Agent's letterhead totaling $1,980,450, which did not mention "social payments" or "subsidies," but instead, as Defendant knew, falsely stated that TITAN owed monies to the Benin Agent for consulting services allegedly performed.

///

///

All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5) and 78ff.

Dated: 6/22/06

CAROL C. LAM
United States Attorney

ERIC J. BESTE
Assistant United States Attorney

STEVEN E. STONE
Assistant United States Attorney

PAUL PELLETIER
Acting Chief, Fraud Section

MARK F. MENDELSOHN
Deputy Chief

U.S. Department of Justice
Fraud Section, Criminal Division